UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JASON STRAMPEL,

          Plaintiff,                 Case No. 2:23-cv-25

v.                                    Honorable Robert J. Jonker

YUBAO LI et al.,

          Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.

Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following KCF staff: Librarian Yubao Li, Assistant Deputy Warden Barb Storey, and Warden Mike Brown.

On February 13, 2022, Plaintiff was transferred to KCF while "[f]acing the task of a criminal appeal . . . ." (Compl., ECF No. 1, PageID.4.) Public records indicate that Plaintiff, represented by counsel, filed a claim of appeal from Plaintiff's criminal conviction on January 31, 2020. Case Information, *People v. Strampel*, No. 352557 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/352557 (select "1," titled, "Claim of Appeal - Criminal," in the list of case events).[1] Plaintiff alleges that, despite multiple requests, Plaintiff was denied access to the KCF law library from February 14, 2020, until March 20, 2020, when Plaintiff received his first use of the law library for one hour. (ECF No. 1, PageID.4.) Plaintiff was also denied "legal writer help," with the legal writer informing Plaintiff that a legal writer could not help until after Plaintiff's appeal was done. (*Id.*)

On March 17, 2020, Plaintiff filed a grievance regarding his inability to use the law library. (*Id.*) When Defendant Storey interviewed Plaintiff regarding Plaintiff's grievance, Defendant

---

[1] When assessing whether a complaint states a claim, the Court is generally limited to the allegations of the complaint. However, that general limitation is not entirely inflexible. The Sixth Circuit Court of Appeals has "taken a liberal view of what matters fall within the pleadings for purposes of [determining whether a complaint states a claim.]" *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Thus:

> If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. *Id.*

*Id.*; *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Accordingly, this Court may take judicial notice of proceedings in other courts of record, including their docket sheets. *Chase v. MacCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020).

Storey informed Plaintiff that she would not "go against one of [her] staff members for a[n] inmate." (*Id.*) Defendant Storey was aware of the "issues" with Defendant Li, but "still allowed Mr. Li to control the law library." (*Id.*)

On March 27, 2020, Plaintiff began requesting more time in the law library, explaining that he needed four hours per week. (*Id.*, PageID.4.) On March 31, 2020, Plaintiff spoke with Defendant Li about Plaintiff's request for more time in the law library, informing Defendant Li that it was MDOC policy to allow 4 hours per week for research. (*Id.*, PageID.5.) In response, Defendant Li told Plaintiff, "I don't give a shit about policy." (*Id.*) On April 6, 2020, Plaintiff "[s]ent a kite to [Defendant] Storey about the law library to request [Plaintiff's] allowed research time." (*Id.*) Plaintiff states that "[Defendant] Li was still not putting [Plaintiff] on call out [for the law library]." (*Id.*) Thereafter, Plaintiff was "call[ed] out" to use the law library on April 10, 2020. (*Id.*) During the April 10, 2020, visit to the law library, Plaintiff told Defendant Li that Defendant Li was discriminating against Plaintiff because Plaintiff is not Muslim. (*Id.*) "Paulie," a non-party Muslim library clerk, told Defendant Li to kick Plaintiff out of the law library, which Defendant Li did. (*Id.*) Plaintiff claims that his inability to do more than three hours of legal research deprived him of the ability to present an adequate Standard 4 brief.[2] (*Id.*)

---

[2] The Michigan Court of Appeals recently described the purpose of a "Standard 4" brief as follows:

> A criminal defendant who has filed a Standard 4 brief has *retained* their constitutional right to an attorney, and their purpose in filing the Standard 4 brief is when they "insist[ ] that a particular claim or claims be raised on appeal against the advice of counsel . . . ." [Administrative Order No. 2004-6, 471 Mich c, cii (2004)]. In other words, a defendant who files a Standard 4 brief in a criminal appeal continues to rely on appellate counsel, and they only file a Standard 4 brief to *supplement*, not *supplant*, appellate counsel's arguments.

*People v. Good*, No. 349268, 2023 WL 322796, at *2 (Mich. Ct. App. Jan. 19, 2023) (emphasis in original).

On June 29, 2020, one of the prison's legal writers incorrectly filed a Freedom of Information Act (FOIA) request for Plaintiff, which was denied because prisoners are unable to file such requests. (*Id.*, PageID.5.) Subsequently, at some point prior to October 23, 2020, Plaintiff submitted a kite requesting help from the prison's legal writer program so that Plaintiff could file a motion to receive audio and video recordings from the criminal trial court. (*Id.*) On October 23, 2020, Defendant Li returned Plaintiff's kite, explaining to Plaintiff that it had been denied because Plaintiff did not fit the criteria for the legal writer program, even though Plaintiff had already been previously approved. (*Id.*) When Plaintiff requested an explanation, Defendant Li simply replied that the legal writer had said "no" and that Plaintiff would need to go through his own lawyer. (*Id.*) Defendant Storey reviewed Plaintiff's grievance on the issue and told Plaintiff that it could not be answered until Defendant Li returned to the prison, knowing that Defendant Li would not return for an extended period of time. (*Id.*, PageID.6.) Defendant Storey told Plaintiff to submit another request. (*Id.*)

On November 16, 2020, KCF "went on lock[]down" due to a COVID-19 outbreak, and the law library was closed. (*Id.*) Plaintiff states that "[a]t a later date," he was able to visit the law library for four hours per week; however, by that time, Plaintiff had already filed his Standard 4 brief. (*Id.*).[3]

On March 31, 2021, Plaintiff received recordings of his criminal trial and other court dates, which Plaintiff believes will demonstrate that the trial court had removed important testimony from the trial transcripts. (*Id.*, PageID.7.) The discs containing the recordings were taken from

---

[3] With respect to Plaintiff's direct appeal, through his court appointed counsel, Plaintiff filed his appellate brief on July 13, 2020. Case Information, *People v. Strampel*, No. 352557 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/352557 (select "10," titled, "Brief: Appellant," in the list of case events)*.* Plaintiff then filed his Standard 4 brief on September 21, 2020. *Id.* (select "17," titled, "Brief: Standard 4," in the list of case events).

Plaintiff because "the contents [were] not allowed[] to be possessed by inmates." (*Id.*) Though Plaintiff submitted kites to Defendants Storey and Brown, Plaintiff was never allowed to view the recordings. (*Id.*) On June 24, 2021, the Court of Appeals issued an opinion affirming Plaintiff's criminal conviction. *People v. Strampel*, No. 352557, 2021 WL 2619738, at *1 (Mich. Ct. App. June 24, 2021).

On August 2, 2021, Plaintiff went to the law library to electronically file his application for leave to appeal to the Michigan Supreme Court. (ECF No. 1, PageID.6.) Defendant Li refused to file all 319 pages of Plaintiff's application for leave to appeal, explaining that much of what Plaintiff sought to file was not required under the Michigan Court Rules. (*Id.*) When Plaintiff began to argue with Defendant Li, Defendant Li told a "jailhouse lawyer" to deal with it, also telling the jailhouse lawyer that Plaintiff "wrote a kite on him yesterday." (*Id.*) Plaintiff alleges that Defendant Li also threatened to issue Plaintiff a "misconduct ticket" without any explanation. (*Id.*) The jailhouse lawyer and library clerks, "all Muslims," then began to argue with Plaintiff, showing Plaintiff the applicable Michigan Court Rule and telling Plaintiff, "[W]e will see you on yard . . . ." (*Id.*) Ultimately, Defendant Li electronically filed only 100 pages of Plaintiff's 319-page application. (*Id.*)

Plaintiff filed a kite and grievance related to Defendant Li's August 2, 2021, actions, but the kite and grievance were denied. (*Id.*, PageID.6–7.) Plaintiff was separately issued a written misconduct for going to the control center; however, Plaintiff does not provide the date of this misconduct or the identity of the person issuing the same. (*Id.*, PageID.6.)

Plaintiff alleges that he later mailed a copy of his application for leave to appeal to the Michigan Supreme Court. (*Id.*) This is confirmed by the Michigan Supreme Court's Case Information sheet, which indicates that Plaintiff first filed an application for leave to appeal

through the Prisoner E-Filing Program on August 2, 2021, Case Information, *People v. Strampel*, No. 163364-5 (Mich.), https://www.courts.michigan.gov/c/courts/coa/case/352557 (select "41," titled, "Application for Leave to SCt," in the list of case events), but later filed an amended application and appendix on August 13, 2021, which the Michigan Supreme Court noted as "replacing ones e-filed via Prisoner Efiling Program on 8-2-2021." *Id.* (select "45," titled, "Michigan Supreme Court: Miscellaneous Filing," in the list of case events). With his amended application for leave to appeal, Plaintiff filed additional papers in an envelope labeled, "Docs to expand the record." *Id.* (select "46," titled, "Michigan Supreme Court: Miscellaneous Filing," in the list of case events).

On April 5, 2022, the Michigan Supreme Court denied Plaintiff's application for leave to appeal. *People v. Strampel*, 971 N.W.2d 644, 645 (Mich. 2022). The court also denied Plaintiff's motion for reconsideration. *People v. Strampel*, 975 N.W.2d 452 (Mich. 2022).

Liberally construed, Plaintiff brings claims against Defendants for denial of access to the Courts, "harassment/discrimination," "abuse," intentional infliction of emotional distress, retaliation, and violation of MDOC policy. (ECF No. 1, PageID.4–6) Plaintiff seeks compensatory damages, as well as injunctive relief to "remove [Defendants] from their positions of power" and to allow Plaintiff access to the evidence needed for his appeal. (*Id.*, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Official Capacity Claims

Plaintiff brings claims against all Defendants in both their individual and official capacities. (ECF No. 1, PageID.2.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

7

Therefore, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, however, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Thus, the Court will dismiss, on grounds of immunity, Plaintiff's claims for damages.

Here, Plaintiff seeks not only damages, but injunctive relief as well, requesting that Defendants be removed "from their positions of power" and that Plaintiff be allowed to access the evidence needed for his criminal appeal. (ECF No. 1, PageID.8.) While damages claims against official capacity defendants are properly dismissed on grounds of immunity, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated

as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

But, importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff is no longer confined at KCF, where he avers that the individual Defendants are employed. (ECF No. 1, PageID.2.)

The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Because Plaintiff is now incarcerated at MBP, and the individual Defendants are not employed at that facility, Plaintiff's official capacity claims for injunctive relief are moot. Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's official capacity claims in their entirety.

### B.       Access to the Courts

Plaintiff claims that Defendants interfered with Plaintiff's access to the courts in connection with Plaintiff's direct appeal of his criminal conviction.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id*. at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead facts that would plausibly suggest that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Because Plaintiff's complaint involves two distinct phases of his criminal appeal— Plaintiff's appeal to the Michigan Court of Appeals, and Plaintiff's appeal to the Michigan Supreme Court—the Court will address Plaintiff's claims in two parts.

1.      **Appeal to the Michigan Court of Appeals**

Plaintiff's claims concerning his appeal to the Michigan Court of Appeals are three-fold. First, Plaintiff claims that he was denied sufficient access to the law library. (ECF No. 1, PageID.4– 5). Second, Plaintiff was denied access to the legal writer program, which Plaintiff claims he needed to obtain "copies of the audio/video from [Plaintiff's] court dates." (*Id.*) And third, while Plaintiff ultimately received the audio/video recordings on March 31, 2021, the recordings were confiscated, and Plaintiff was not permitted to view them. (*Id.*, PageID.7.)

Each of the foregoing claims first fail because Plaintiff was represented by appellate counsel during his appeal to the Michigan Court of Appeals, from January 31, 2020, through June 24, 2021.[4] A prisoner who is represented by counsel has no freestanding right to access a jail or prison law library and cannot separately maintain an action for denial of access to the courts. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983); *cf. United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (concluding that defendant's waiver of right to court-appointed counsel

---

[4] In discussing his claim that he was deprived of the opportunity to review the audio/video recordings, Plaintiff claims that the "only way for [Plaintiff] to view the videos was with a lawyer, a lawyer [he] couldn't afford." (ECF No. 1, PageID.7.) However, public records make clear that, at the time that Plaintiff sought, obtained, and was denied access to the audio/video recordings, Plaintiff was represented by counsel. Case Information, *People v. Strampel*, No. 352557 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/352557.

and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library).

Moreover, Plaintiff's claims arise only from Plaintiff's inability to prepare an adequate *pro se* supplemental brief or to independently "p[er]fect the record for [his] appeal." (ECF No. 1, PageID.5, 7.) But the Supreme Court has held that a defendant has no constitutional right to represent himself on appeal. *Martinez v. Ct. of App. of Calif.*, 578 U.S. 152, 163 (2000). This stems from the idea that rights protected by the Sixth Amendment, including the right to self-representation, are rights applicable to the trial phase; the Sixth Amendment does not include any right to appeal. *Id.* at 160. The Court has also rejected the idea that the right to self-representation on appeal could be grounded in the Fourteenth Amendment's Due Process Clause: "under the practices that prevail in the Nation today . . . we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." *Id.* at 161. Consequently, there is no "constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).

Because Plaintiff was represented by appellate counsel, any actions by Defendants in denying Plaintiff sufficient hours in the law library, access to the legal writer program, or access to the audio/video recordings so that Plaintiff could prepare his own *pro se* brief or other filings would not violate Petitioner's constitutional rights.

Additionally, with respect to the element of "actual injury," the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v.*

*Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Therefore, a plaintiff

must plead facts that would demonstrate that "a nonfrivolous legal claim ha[s] been frustrated or

was being impeded" in a manner "sufficient to give fair notice to the defendant." *Id.* at 415–416.

The predicate claim must "be described well enough to apply the 'nonfrivolous' test and to show

the 'arguable' nature of the underlying claim is more than hope," and "the remedy sought must

itself be identified" and not otherwise available in a lawsuit that has not yet been brought. *Id.*; *see

also Clark v. Johnston*, 413 F. App'x 804, 816 (6th Cir. 2011).

      Plaintiff fails to provide this Court with sufficient facts to meet the element of actual injury.

Plaintiff claims that, as a result of his inability to access the law library, Plaintiff was deprived of

"the ability to present an adequate Standar[d] 4 Brief." (ECF No. 1, PageID.5.) However, Plaintiff

does not describe any of the claims set forth in his Standard 4 brief, let alone the "nonfrivolous"

claims that Plaintiff was unable to adequately present to the Court of Appeals as a result of

Defendants' actions.

      And although Plaintiff was denied access to the prison's legal writer program to "help to

file a motion in the trial court to receive copies of the audio/video from [Plaintiff's] court dates,"

(ECF No. 1, PageID.5), Plaintiff acknowledges that he was in fact able to request copies of these

recordings on his own, and the materials were sent to the prison and received on March 31, 2021.

(*Id.*, PageID.7.) Therefore, Plaintiff was not prejudiced by the denial of legal writer assistance. *See

Thomas v. Rochell*, 47 F. App'x 315, 318 (6th Cir. 2002) (explaining that a plaintiff cannot show

injury where, despite the actions of the defendants, the plaintiff was still able to obtain the relief

requested).

      Finally, while Plaintiff was unable to personally view the audio/video recordings, which

Plaintiff claims contain evidence of "changes in the transcripts" (ECF No. 1, PageID.7), Plaintiff

fails to provide the Court with any facts that would suggest that the alleged discrepancies would have given rise to a nonfrivolous claim on appeal. Plaintiff does not even identify the nature of the alleged discrepancies, let alone the legal claims that these discrepancies would allegedly support. Plaintiff instead asks this Court to infer an "actual injury" from mere ambiguity; however, ambiguity does not state a § 1983 claim.

Accordingly, for each of the foregoing independent reasons, the Court will dismiss Plaintiff's access to the courts claims premised upon the denial of sufficient hours in the law library, access to the legal writer program, and access to the audio/video recordings.

### 2.        Application for Leave to Appeal to the Michigan Supreme Court

With respect to Plaintiff's application for leave to appeal to the Michigan Supreme Court, Plaintiff claims that Defendant Li refused to electronically file all 319 pages of Plaintiff's documents, requiring Plaintiff to mail an amended application for leave to appeal and appendix, (*id.*, PageID.6).

The Court need not decide whether it was appropriate for Defendant Li to exercise editorial control over Plaintiff's electronically filed application for leave to appeal, filing only 100 pages of the original 319 pages. (*See* ECF No. 1, PageID.6.). As with the claims discussed above, Plaintiff fails to plead sufficient facts to show actual injury. *See Lewis*, 518 U.S. at 349. Plaintiff may have initially been prevented from filing his entire 319-page application for leave to appeal to the Michigan Supreme Court, but Plaintiff acknowledges that he later had the opportunity to mail his own version of his application for leave to appeal and appendix, (ECF No. 1, PageID.6), which was accepted by the Michigan Supreme Court as "replacing ones e-filed via Prisoner Efiling Program on 8-2-2021," Case Information, *People v. Strampel*, No. 163364-5 (Mich.), https://www.courts.michigan.gov/c/courts/coa/case/352557 ("Michigan Supreme Court: Miscellaneous Filing," select "45" in the list of case events). Under these circumstances, Plaintiff

14

fails to plead that he suffered any injury as a result of Defendant Li's refusal to electronically file all 319 pages of Plaintiff's application for leave to appeal. Accordingly, for these reasons, the Court will dismiss Plaintiff's access to the courts claim regarding his appeal to the Michigan Supreme Court.

### C.    Retaliation

Plaintiff claims that Defendant Storey denied Plaintiff's grievance requesting the assistance of a legal writer in retaliation for Plaintiff's past grievances. (ECF No. 1, PageID.6.).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274, 287 (1977)).

Even assuming without deciding that Plaintiff has satisfied the first two elements of a retaliation claim, Plaintiff has provided the Court with no facts to plausibly suggest that Defendant Storey's decision to deny Plaintiff grievance requesting access to the legal writer program was motivated, at least in part, by Plaintiff's protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be

sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts from which the Court could infer that Defendant Storey retaliated against Plaintiff because Plaintiff had previously filed grievances against Defendant Li related to Plaintiff's inability to use the law library. Accordingly, Plaintiff's speculative allegations fail to state a First Amendment retaliation claim against Defendant Storey, and such claim will be dismissed.

### D. Verbal Harassment

Plaintiff contends in a conclusory fashion that Defendants should be held liable for "harassment" (ECF No. 1, PageID.4); however, Plaintiff does not describe the nature of this claim. Viewed indulgently, the Court presumes that Plaintiff is referring Defendant Li's comment: "I don't give a shit about policy," (*id.*, PageID.5), Defendant Li telling a jailhouse lawyer that Plaintiff had submitted a kite about either Defendant Li or the jailhouse lawyer (*id.*, PageID.6),[5]

---

[5] Plaintiff's complaint is unclear, stating that Defendant Li told "the jailhouse lawyer that [Plaintiff] wrote a kite on him yesterday." (ECF No. 1, PageID.6.)

and comments by library clerks that they would "see [Plaintiff] on yard," (*id.*). These allegations, even taken as true, are insufficient to state a constitutional claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The Sixth Circuit has consistently held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (finding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003

17

WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (concluding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (holding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Furthermore, to the extent that Plaintiff seeks to hold Defendants liable for the harassment by library clerks, government officials, such as Defendant Li, Storey, and Brown, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Under these circumstances, Plaintiff's conclusory assertion that Defendants engaged in "harassment" is insufficient to state an Eighth Amendment claim. (ECF No. 1, PageID.4.)

Accordingly, Plaintiff's Eighth Amendment claim against arising from alleged harassment will be dismissed.

### E.   Discrimination

Plaintiff's claims of "discrimination" fare no better. Armed with nothing more than Plaintiff's own subjective beliefs, Plaintiff suggests that Defendant Li denied Plaintiff access to the law library for his allotted four hours because he was not Muslim. (*Id.*, PageID.5.) He claims that a clerk, who was Muslim, told Defendant Li to kick Plaintiff out, which Defendant Li did. (*Id.*) Plaintiff also claims that other clerks, "all Muslims," argued with Plaintiff over the requirements for Plaintiff's application for leave to appeal, telling Plaintiff, "we will see you on yard . . . ." (*Id.*, PageID.6.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by religion, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, at all times, the threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class or has no rational basis.'").

Plaintiff's allegations are woefully insufficient to demonstrate that he suffered disparate treatment in relation to similarly situated Muslim prisoners. To be similarly situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992). Plaintiff does not plead even a single fact to plausibly suggest that he was treated differently than any similarly situated Muslim prisoner. And there is no basis for the Court to infer that Defendants engaged in discrimination just because law clerks who happened to be Muslim treated Plaintiff in ways that Plaintiff found objectionable. Plaintiff's allegations of discriminatory treatment are wholly conclusory, and conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court will dismiss Plaintiff's "discrimination" claim.

### F.     Violation of MDOC Policy

Plaintiff alleges that Defendants violated MDOC policy by not allowing Plaintiff a full four hours of law library time per week and not affording Plaintiff the assistance of a prison legal writer. (ECF No. 1, PageID.4–5, 6.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegations that Defendants violated prison policy fail to raise any cognizable federal claim.

## G. State Law Claims

Lastly, Plaintiff appears to bring state law claims, which may include "harassment/discrimination, abuse . . . intentional [infliction] of mental distress, [and] infliction of danger." (ECF No. 1, PageID.4.) In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

21

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims without prejudice to Plaintiff's ability to bring those claims in the state courts.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    March 24, 2023                    /s/ Robert J. Jonker
                                            Robert J. Jonker
                                            United States District Judge